# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————— )
DAVID A. BLANCO )
)
    Plaintiff, ) Case No: 22-cv-1883 (RC)
)
    v. ) Motion for Summary Judgment
)
CHRISTINE E. WORMUTH, )
)
    Defendant. )
———————————————————— )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff David Blanco hereby moves for summary judgment pursuant to Federal Rule of

Civil Procedure 56(a) for the reasons set forth in the accompanying Memorandum of Law.

Respectfully Submitted,

Elizabeth M. Candelario, D.C. Bar No. 986218
Elizabeth.candelario@parlatorelawgroup.com
202-788-6274

Kieran McDowell, Bar No. PA0099
Kieran.mcdowell@parlatorelawgroup.com
215-619-3122

PARLATORE LAW GROUP, LLP
One World Trade Center, Suite 8500
New York, NY 10007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————————————————
)
DAVID A. BLANCO                                  )
                                                 )
              Plaintiff,                          )         Case No: 22-cv-1883 (RC)
                                                 )
       v.                                         )         Memorandum of Law in Support of
                                                 )         Motion for Summary Judgment
CHRISTINE E. WORMUTH,                             )
                                                 )
              Defendant.                          )
——————————————————————— )


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii

STATEMENT OF FACTS ........................................................................................................... 1

ARGUMENT ................................................................................................................................ 8

    I.    Standard of Review.......................................................................................................... 8

    II.   The Board's Finding that the Criteria for Removal of the GOMOR was Not Met is Arbitrary, Capricious, and Abuse of Discretion and Contrary to Law ....................................... 9

    III.    The Board's Finding that that the evidence does not support the setting aside of punishment and UCMJ Has Not Served Its Purpose is Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law............................................................................................... 13

    IV.    The Board's Finding that Based Upon a Preponderance of the Evidence, There is Insufficient Evidence to Grant Any Relief is Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law .......................................................................................................................... 18

CONCLUSION........................................................................................................................... 23

# TABLE OF AUTHORITIES

Cases

*Am Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) ............................................. 8

*Calloway v. Brownlee,* 366 F.Supp.2d 43 (D.D.C. 2005) ................................................. 13, 20, 21

*Chevron U.S.A. Inc. v NRDC*, 467 U.S. 837 (1984) ....................................................... 13

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ................................... 9

*Dickson v. Sec'y of Defense,* 68 F.3d 1396 (D.C. Cir. 1995) ............................................. 9, 10, 19

*Gonzales v. United States*, 160 Fed. Cl. 172 (2022) ........................................................ 18

*Harris v. United States*, 102 Fed. Cl. 390 (2011) ........................................................... 18

*Holmes v. United States*, 2019 U.S. Dist. LEXIS 2837 (D.D.C., 2019) ............................... 18

*Jackson v. Mabus*, 919 F.Supp. 2d 117 (D.D.C. 2013) ..................................................... 9, 10

*Lubow v. United States Dep't of State,* 923 F.Supp.2d 28 (D.D.C. 2013) .................................. 8

*Marta v. Whitley,* 2021 U.S. Dist. LEXIS 61996 (D.D.C. 2021) ......................................... 19, 20

*Or. Natural Desert Ass'n v. Cain*, 17 F. Supp.3d 1037 (Or. Dist. Ct. 2014) ............................. 8

*Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633 (1990) ........................................ 10

*Pettiford v. Sec'y of the Navy,* 774 F.Supp. 2d 173 (D.D.C. 2013) ...................................... 13, 20

*Pub. Citizen, Inc. v. FAA,* 988 F.2d 186 (D.C.Cir. 1993). ................................................. 8, 9

*Richard v. INS*, 554 F.2d 1173 (D.C.Cir. 1977) ............................................................ 8

*Seifert v. Winter,* 555 F.Supp.2d 3 (D.D.C. 2008) ......................................................... 13

*Smith v. Dalton*, 927 F.Supp. 1 (D.D.C. 1996). ........................................................... 9

*Tex Tin Corp. v. EPA*, 935 F.2d 1321 (D.C. Cir. 1991) .................................................... 19

Statutes

5 USC §706 .......................................................................................................................... 8

Regulations

32 C.F.R § 581.3 ........................................................................................................... 18, 20

Army Regulation 15-185 ....................................................................................................... 1

Army Regulation 15-6 .......................................................................................................... 21

Army Regulation 27-10 ........................................................................................................ 14

Army Regulation 600-37 .......................................................................... 10, 14, 15, 16, 17

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff David Blanco filed this action under the Administrative Procedure Act (APA) to seek review of a final decision from the Army Board for Correction of Military Records (ABCMR or Board), denying Mr. Blanco's application to correct his military records. The ABCMR is authorized to take corrective action to remedy an error or injustice. 10 U.S.C. § 1552; Army Regulation 15-185. Specifically, Mr. Blanco requested removal of adverse information from his military records, the presence of which prevented his promotion to Captain and resulted in forced separation from the Army despite a continued desire to serve. Mr. Blanco presented substantial evidence and analysis to support the error and injustice of failing to remove the records and directed the Board to prior ABCMR decisions granting relief in similar circumstances. The ABCMR acknowledged all of the evidence, then summarily denied relief for insufficient evidence. For the reasons set forth herein, the record shows the ABCMR's decision was arbitrary, capricious, an abuse of discretion, and contrary to law.

## STATEMENT OF FACTS

Mr. Blanco enlisted in the United States Army Reserves on October 20, 1989. During his time as an enlisted soldier, Mr. Blanco successfully completed his undergraduate education earning a degree from Northeastern Illinois University on December 18, 2000. AR 000299. In 2003, as an Enlisted Soldier in the Army Reserves (SGT/E-5), while serving in the position of Brigade Flight Medic with the 244th Aviation Brigade, Mr. Blanco was sent to the Army Flight Medic Course at Ft. Rucker, Alabama where he graduated first in his class. As the Distinguished Honor Graduate, he was awarded one of his five (5) Army Achievement Medals, as the top

1

Academic Student of the cycle.  On June 1, 2003, Mr. Blanco was promoted from Sergeant to Staff Sergeant. AR000235.

In 2003-2004, Mr. Blanco served a combat tour in Afghanistan. For his service during that time, from February 2003 through August 2004, Mr. Blanco was recommended for a Meritorious Service Medal for his "intense devotion to duty, high professional standards and strong sense of personal excellence."  AR 000472-000473.   In February 2004, however, he was issued a non-judicial punishment (NJP) under Article 15 of the Uniform Code of Military Justice (UCMJ) for allegedly falling asleep while on duty, an allegation he has always contested as untrue.  AR000039-000040; AR000043.  Mr. Blanco was reduced in rank to Sergeant/E5, given 45 days of extra duty, and a record was placed in the restricted folder of his AMHRR.

Mr. Blanco continued to serve as an enlisted soldier, receiving numerous awards including the Army Superior Unit Award on December 28, 2005. AR000299. He ultimately progressed to the rank of E7 or Sergeant First Class. As a Sergeant First Class, he was awarded the Army Achievement Medal for his exceptionally meritorious service as the Lead Instructor at the Modern Army Combatives courses in September 2008. AT 000535-000536. He was awarded an additional Achievement Medal on January 10, 2009. AR000291. Mr. Blanco received an excellent evaluation report for the period of February 1, 2010 to September 29, 2010 and was described as having "excellent military bearing and appearance." AR000324

In 2010, Mr. Blanco applied for Direct Commission, a program to be commissioned as an Officer in the Army Reserves.  He was forthcoming regarding the NJP and it did not hinder his application.  On September 30, 2010, Mr. Blanco accepted his appointment and was commissioned as a Second Lieutenant (2LT) in the Army Reserves. AR000058. Directly following his commissioning, Mr. Blanco served as the Executive Officer or second-in-

command for his company where he was described as doing an "outstanding job" with immediate promotion capabilities. AR000396.

Mr. Blanco continued with his infantry training, ultimately completing the difficult 16-week Infantry Basic Officer Leadership Course (IOC). AR 000393. During IOC, then Second Lieutenant Blanco was issued a general officer memorandum of reprimand (GOMOR) for conduct unbecoming of an officer on August 29, 2011, following dinner at a Texas Road House with several other student lieutenants, including two Muslim students. AR 000038. Mr. Blanco and the other officers mistakenly thought that the ribs were beef and offered one to the Muslim students, but jokingly told them they were pork to get a reaction. When it turned out the ribs actually *were* pork, the Muslim student was angry and Mr. Blanco was embarrassed and upset. He apologized and paid for their meals. Despite denying his actions were violative of the UCMJ or that he intended to degrade or insult his friends, Mr. Blanco accepted full responsibility for any perceived insensitivity. AR000331. He thereafter voluntarily completed one-on-one equal opportunity sensitivity training and volunteered as his unit's Equal Opportunity officer. AR000143.

In 2012, while serving as a member of the Florida Army National Guard as a 2LT, Mr. Blanco volunteered and was selected to be the Officer In Charge (OIC) of a Platoon of Soldiers to act as Opposition Forces (OPFOR) and Trainers for an International and Joint Service Training Mission. This Training Mission involved over 300 Marines and Coalition Forces. His expertise and Leadership were recognized with the awarding of his second (2nd) Army Commendation Medal.

Mr. Blanco was promoted to First Lieutenant on March 30, 2012. AR000435. He was very successful during his time as a First Lieutenant as evidenced by the high marks reported on

his Officer Evaluation Reports (OER). For his service between February 22, 2012 and February 21, 2013, his rater described Mr. Blanco as "conscientious" and wrote "promote ahead of peers." AR000447. Between February 22, 2013 and June 30, 2013, the rater stated Mr. Blanco "performed superbly … as indicated by his numerous accomplishments." AR000456. For the period of August 24, 2015 through August 23, 2016, his OER rated him in the top 5% of Army first Lieutenants across Special Operations Command Central, described him as an "outstanding officer with absolutely unlimited potential" and recommended he be selected for promotion to Captain and assigned to the most difficult Infantry Company Command. AR 000511-000512. Mr. Blanco's report for August 24, 2016 through May 31, 2016 rated him "most qualified," recommended he be promoted below zone to Captain and selected for Company Command, and noted his proficiency, compassionate leadership, and drive to be a Battalion Commander. AR 000526-000527. He was issued a Joint Service Achievement Medal for his meritorious service as the executive officer of the Special Operations Command Central while performing Annual Training in 2016. AR 000567.

On May 17, 2016, a Promotion Selection Board selected Mr. Blanco for promotion to Captain. However, Mr. Blanco thereafter received notification from the Army Human Resources Command ("AHRC") that his promotion was delayed and he was being referred to a Promotion Review Board due to the 2004 NJP and 2011 GOMOR in his Army Military Human Resource Record (AMHRR). AR000070-000071. The Promotion Review Board voted that Mr. Blanco be removed from the promotion selection list and required to show cause for retention, meaning he needed to defend against being administratively separated from the Army. AR000072. Mr. Blanco was officially removed from the Army promotion list on May 14, 2018. AR 000521.

The Commanding General of the Army Reserve Command was directed to initiate administrative separation (also referred to as elimination proceedings) on the same date. *Id.;* AR000076.

During this time, Mr. Blanco's Officer Evaluation Report for the period June 1, 2017 through May 31, 2018 rated him as a "most qualified" officer, described him as a "phenomenal Company Commander" and ranked him #1 out of the 10 officers being rated. His report for June 1, 2018 through May 31, 2019 again ranked him as #1 out of 10 lieutenants and described him as someone who "absolutely epitomizes the Army Values as an exceptional leader" and recommended he be immediately selected for Captain and assigned as a battalion operations officer where he could continue to make a difference in the global SOCOM ARE mission. AR 000530-000531. In several fitness evaluations, it was said Mr. Blanco had "unlimited potential in every aspect." AR000525; AR000531. Mr. Blanco was considered a "vital asset" deserving of immediate promotion and command leadership. AR000527. This is further illustrated by his service as Group Support Company Commander in the Army Reserves, assigned to the United States Special Operations Command, in 2019. He was also in Command of a detachment of Soldiers and Officers attached to the NATO JOINT SPECIAL OPERATIONS COMMAND in Belgium, where he distinguished himself as a Subject Matter Expert (SME) and was also awarded Belgian Airborne Wings, as a result of completing their school requirement while in country; one of his five (5) Foreign Service Awards.

A Board of Officers, more commonly known as a Board of Inquiry ("BOI") or a "Show Cause Board" was convened by the Army's Operational Response Command on May 29, 2019. AR000060-000069. The purpose of the BOI was to determine whether Mr. Blanco had committed the acts underlying the previous NJP and GOMOR and whether Mr. Blanco should be separated from the Army or retained. *Id*. The BOI found Mr. Blanco did not commit the acts for

which he was subject to NJP or issued a GOMOR and voted unanimously to retain Mr. Blanco in the Army Reserves. AR000056, AR000069. The findings and recommendations of the BOI were approved by Lieutenant General Charles Luckey and Mr. Blanco was retained in the Army. AR000083.

Accordingly, Mr. Blanco was once again considered for promotion to Captain. A promotion board was convened in April of 2019. At that time, however, the BOI results were not yet entered into Mr. Blanco's records. Due to the adverse information in his file, i.e. the record of NJP and the GOMOR, he was once again not selected for promotion.

Because Mr. Blanco was twice denied promotion to Captain, he was subject to mandatory separation. On October 1, 2019, Mr. Blanco was informed he was being separated from the Army because he had not been selected for promotion to Captain. AT000077. Mr. Blanco attempted to have the records of NJP and the GOMOR removed or transferred from his AMHRR (only the ABCMR has the authority to remove a NJP); on November 18, 2019 he submitted a memorandum and documents to the Department of Army Suitability Evaluation Board ("DASEB") in accordance with Army Regulation 600-37. AR000081-000082.

The DASEB, however, voted to deny the transfer or removal of the requested information. AR 000092-93, 000586. The DASEB concluded that Mr. Blanco had not proven the GOMOR was unjust or untrue by clear and convincing evidence because the DASEB is not bound by the findings of a BOI and Mr. Blanco did not submit a letter from the Imposing Authority (meaning the command that issued the GOMOR) stating the reprimand was unjust or untrue. AR000100. Additionally, the DASEB voted against transferring the unfavorable information to the restricted portion, arguing Mr. Blanco had not provided substantial evidence the GOMOR had served its purpose or that it was in the Army's best interest. AR 000585. On

May 21, 2020, despite a strong desire to continue honorably serving as an Army Reserve Officer, Mr. Blanco was forced into retirement. AR 000589-000590. This retirement was unrelated to his performance, as Mr. Blanco's final OER ranked him within the top 1% of lieutenants and captains his rating officer had ever served with, noting Mr. Blanco's "unlimited potential" and suitability for assignment as a Company Commander or Company Executive Officer (XO), explaining Mr. Blanco "was very committed to helping his organization, in any capacity." 000587-000588.

Soon thereafter, on May 19, 2020, Mr. Blanco petitioned the ABCMR. He requested the ABCMR correct his records by removing the records of NJP and GOMOR. Mr. Blanco further requested that a special selection board be convened to consider his promotion to Captain without the adverse information in his file, and with the addition of the BOI findings that had not been available to the previous promotion board.

The ABCMR allegedly issued its final opinion on March 16, 2021, but it was not provided to Mr. Blanco until May 6, 2022 after an inquiry from Senator Mark Rubio's office. In its opinion, the Board denied Mr. Blanco any of the requested relief. The Board issued a one paragraph discussion of the evidence wherein it concluded that Mr. Blanco did not provide clear and convincing evidence that the GOMOR was untrue or unjust; and that there was insufficient evidence to show the UCMJ had served its purpose such that punishment should be set aside. AR000025.

I.      **Standard of Review**

In cases involving review of a final agency action under the Administrative Procedure Act (APA), the summary judgment standard of Federal Rule of Civil Procedure 56(a) does not apply. Rather, "the district judge sits as an appellate tribunal. The entire case on review is a question of law." *Am Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Lubow v. United States Dep't of State,* 923 F.Supp.2d 28, 34 (D.D.C. 2013) (*citing Richard v. INS*, 554 F.2d 1173, 1177 (D.C. Cir. 1977); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985); *see also Or. Natural Desert Ass'n v. Cain*, 17 F. Supp.3d 1037 (Or. Dist. Ct. 2014) (*citing Occidental Eng'g Co. V. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985) "[w]here the district court reviews an administrative action pursuant to the APA, summary judgment is an appropriate mechanism for deciding the purely legal question of whether the agency could have reasonably reached the decision that it did.").

Federal courts review decisions by the Army Board for Correction of Military Records (ABCMR) under §706 of the Administrative Procedures Act. *See, e.g., Haselwander v. McHugh,* 774 F.3d 990 (D.C. Cir. 2014). Under the APA, a reviewing court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.;* 5 USC §706(2)(A). "The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result." *Pub. Citizen, Inc. v. FAA,* 988 F.2d 186, 197 (D.C. Cir. 1993). An agency's explanation as related to the final determination must contain "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*citing*

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). And while there is a presumption of regularity in agency action, "that presumption does not to shield [the agency's] action from a thorough, probing, in-depth review." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971).

The decision before the ABCMR in this case was whether corrective action should be taken to remedy an error or remove an injustice. *See* 10 U.S.C § 1552; Army Regulation (AR) 15-185 §2-2 Army Regulation 15-185 sets forth the procedures for the ABCMR and specifies that the Board must determine "whether the preponderance of the evidence shows that an error or injustice exists and if so, what relief is appropriate." §2-10.c.(a)

## II. The Board's Finding that the Criteria for Removal of the GOMOR was Not Met is Arbitrary, Capricious, and Abuse of Discretion and Contrary to Law

If an agency does not specify factual or legal grounds for its decision, it is not entitled to as much deference. *Smith v. Dalton*, 927 F.Supp. 1, 5 (D.D.C. 1996); *see also Haselwander,* 774 F.3d at 996 ("the Board's action must be supported by 'reasoned decision making'" and no deference is owed to the Board's purported expertise when the Board's explanation lacks coherence) (internal citations omitted). Importantly, there is "a requirement that the agency adequately explain its result." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 *citing Public Citizen, Inc*., 988 F.2d at 197. "When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision." *Jackson v. Mabus*, 919 F.Supp. 2d 117, 121 (D.D.C. 2013) (*citing Dickson,* 68 F.3d at 1405).

The ABCMR's decision in this case was arbitrary and capricious because the Board offered nothing more than a restatement of the legal standard of review with no analysis or

explanation as to why the evidence and arguments raised by Mr. Blanco were rejected or insufficient. Mr. Blanco requested the ABCMR remove a GOMOR and record of NJP from his AMHRR. (AR000032). The ABCMR summarily concluded that "the criteria allowing for the removal of the GOMOR from his OMPF was not met." The Board offered no reasoned explanation to ignore the plethora of evidence submitted by Mr. Blanco demonstrating that the GOMOR was untrue and that it was unjust. Its decision is arbitrary and capricious and must be set aside. Simply restating the legal standard, without any explanation or analysis, is not an agency decision entitled to deference from this Court. *Jackson,* 919 F.Supp. 2d at 121 (D.D.C. 2013) (*citing Dickson,* 68 F.3d at 1405 (D.C. Cir. 1995)); *see also Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990) (finding APA requires agency explain its rationale to allow reviewing court understand agency decision).

As the ABCMR stated in its decision, once filed in the OMPF, a document is presumed to be administratively correct; the burden of proof is on the applicant to provide evidence of a clear and convincing nature that the document is untrue or unjust, thereby warranting its removal or alteration. AR 600-37 Ch 7. Relevant, substantive evidence may include, but is not limited to, an official investigation showing the initial investigation was untrue or unjust; decisions made by an authority above the imposing authority overturning the basis for the adverse documents; notarized witness statements; historical records; official documents; and/or legal opinions. AR 600-37 Chapter 7 para 7-2(c).

As the ABCMR acknowledged, Mr. Blanco presented the official report of a Board of Inquiry that was charged to determine whether Mr. Blanco had exercised extreme insensitivity toward the religious practices of an Afghan officer, the conduct serving as the basis of the GOMOR at issue. The BOI found, by a preponderance of the evidence, that Mr. Blanco did *not*

engage in such conduct.  Lt Blanco explained in detail to the ABCMR, included in a legal opinion from his attorney, why the BOI findings are more accurate and reliable than the investigation leading to a GOMOR in this specific case.[1]  AR000034.  He also provided evidence that his current command highly valued him, wanting to retain and promote him, but was precluded by the GOMOR.  Mr. Blanco also pointed out that although he presented substantive evidence to refute the allegations of the GOMOR before the BOI, the government did not keep his exhibits or a transcript of the BOI hearing.  Thus, he was unable to present the same substantive evidence to the DASEB.

The ABCMR lists and summarizes this evidence in its Record of Proceedings.  However, in issuing a decision, the ABCMR does not provide any explanation as to why the BOI findings that Mr. Blanco did not engage in the conduct is insufficient evidence to prove that the content of the GOMOR is untrue or, along with the other evidence, unjust.  To the extent the ABCMR relies upon the logic of DASEB, their rationale is insufficient to survive judicial scrutiny.  DASEB essentially stated that only a letter from the Imposing Authority (meaning the command that issued the GOMOR) admitting the reprimand was unjust or untrue would suffice.  AR000100 (DASEB found no proof that the GOMOR was unjust because the DASEB is not bound by the findings of a BOI and Mr. Blanco did not submit a letter from the Imposing Authority stating the reprimand was unjust or untrue.).  Such conclusion is contrary to the language of the Army Regulation, which provides a list of multiple potential sources of clear and

---

[1] Notably, the standard of proof for issuing a GOMOR is also preponderance of the evidence, meaning a Commander must believe it was more likely than not that the Solider committed the misconduct alleged.  *See* ___ (what can we cite to here?)

convincing evidence.  It is also contrary to Mr. Blanco's argument, which did not claim the

DASEB or ABCMR are bound by the findings of a BOI.  Rather, he asserted that they should be

considered as relevant, substantive evidence sufficient to establish the untruth and injustice of the

GOMOR, particularly in light of the consideration given to the matters at issue by the BOI in

comparison to the less probative review conducted by the Imposing Authority in this specific

case. Neither DASEB nor ABCMR seemed to give individual consideration to the relevance of

the BOI findings here, or valid reason to disregard them.

Critically, DASEB's expectation of a letter from the Imposing Authority is unreasonable.

The members of the command that issued the GOMOR are no longer part of that command and

the individuals in command at the time Mr. Blanco applied for removal had no knowledge of the

underlying incident.  There was no practical way for Mr. Blanco to seek a statement from

persons with no knowledge of the incident or of Mr. Blanco; they would not be able to

affirmatively state the prior members of the command issued an untrue or unjust reprimand.

Rejecting Mr. Blanco's evidence for lack of specific, allegedly obtainable evidence that is not

practically available renders the Board's decision arbitrary and capricious.  *Cf. Code v.*

*McCarthy*, 959 F.3d 406 (D.C. Cir. 2020) (Board's decision was arbitrary and capricious when it

rejected argument for want of corroboration such as "statement from the Registrar" which

"would appear to be easily obtained" when it was not at all apparent how member could have

obtained such a statement).

As set forth in the following section, Mr. Blanco presented significant evidence of the

injustice of leaving the GOMOR in his records.  This included evidence that the purpose of the

reprimand had been met, that he learned from his mistakes, that his command valued his service

and desired retaining and promoting him so he could continue to serve, and that he was forced to

retire despite a continued desire to serve because of the presence of the GOMOR and NJP in his records. None of these seem to have been considered by the ABCMR in its decision.

The ABCMR's conclusion that criteria for removal were not met, without any proffered reason to reject the substantial evidence that seemingly meets such criteria, was arbitrary and capricious and must be set aside.

### III. The Board's Finding that that the evidence does not support the setting aside of punishment and UCMJ Has Not Served Its Purpose is Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law

BCMR action is arbitrary and capricious if it fails to follow procedure as required by law. *Seifert v. Winter,* 555 F.Supp.2d 3, 15 (D.D.C. 2008); *Calloway v. Brownlee,* 366 F.Supp.2d 43, 53 (D.D.C. 2005). In accordance with the standard set forth by *Chevron U.S.A. Inc. v NRDC*, an agency's interpretation of a statute is entitled to deference only if the statute is ambiguous and the agency's interpretation is reasonable. 467 U.S. 837 (1984). "[I]f a military board of corrections 'fails to address … arguments that are not facially frivolous,' it's decision must be reversed and the matter remanded." *Pettiford v. Sec'y of the Navy,* 774 F.Supp. 2d 173, 182 (D.D.C. 2013) (*quoting Frizelle v. Slater,* 111 F.3d 172 at 175, 177 (D.C. Cir 1989). Specifically, when the ABCMR "fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate [a]nd such a violation, contrary to the evidence, is arbitrary and capricious." *Haselwander,* 774 F.3d at 996 (internal citations omitted). BCMR determinations that are the result of material legal error or injustice must be set aside. *Seifert*, 555 F.Supp.2d at 15.

The ABCMR arbitrarily and capriciously concluded that the evidence does not support setting aside punishment and UCMJ has not served its purpose without considering or offering

reasons to reject the substantial evidence that does support setting aside punishment and which illustrates that the UCMJ *has* served its purpose in Mr. Blanco's case.  The Board abused its discretion, acted contrary to law, and its arbitrary and capricious decision must be set aside.

Army Regulation 600-37 governs the placement and removable of unfavorable information such as GOMORs and records of NJP. The regulation's purpose is "to ensure that unfavorable information that is unsubstantiated, irrelevant, untimely, or incomplete is not filed in an individual official personnel files; and, to ensure that the best interests of the Army and the soldiers are served by authorizing the unfavorable information be placed in, and when appropriate, removed from official personnel files." AR000581-000582; AR 600-37 1-6.c. Another objective is to "provide a means of correcting injustices if they occur."  *Id.* 1-4(d). In general, the army regulation explains that unfavorable information, such as a GOMOR, may be used to "[e]nsure that Soldiers of poor moral character are not continued in the Army." AR 600-37 1-4(e).  The regulation indicates that records may be transferred to the restricted portion of the AMHRR when the applicant provides proof that the intended purpose of the document has been served and transfer would be in the best interest of the army. AR 600-37 § 7-2d(3)(b).

Similarly, AR 27-10 § 3-43 states that officers may request the transfer of a record of NJP to the restricted folder of their OMPF with the submission of substantive evidence that the intended purpose of Article 15 has been served and that transfer of the record is in the best interest of the Army.  Although Mr. Blanco requested removal of the records from his file before the BCNR, to the extent proof that the purpose of the document has been served is relevant to removal as well, Mr. Blanco met the standard.

The Army Regulation specifies that relevant evidence includes statements of support from the imposing authority, the Soldier's current chain of command, the chain of command at

14

the time of imposition, and/or other memorandums of support; subsequent evaluation reports; notarized witness statements; official documents; court documents; statements of remorse; documents demonstrating rehabilitation; other documents proving the intended purpose of the document has been served; and legal documents. AR 600-37 § 7-2(c).

In this case, Mr. Blanco submitted significant evidence showing the GOMOR and record of NJP had served their purpose and it was in the Army's best interest to transfer these records to the restricted portion of his OMPF. Mr. Blanco provided statements from his chain of command and other memorandums of support, including a memorandum from a Brigadier General explaining that Mr. Blanco received an Army Commendation Medal for his impact in leadership after voluntarily completing a cultural sensitivity class and volunteering as the unit's Equal Opportunity Officer, in complete contrast to any assertions of "immaturity and insensitivity". Mr. Blanco also submitted a memorandum from a Colonel stating Mr. Blanco's 30 years of honorable service far outweigh the mistakes from which he has learned and which he leverages as learning tools in mentoring future leaders, recommending removal of the derogatory information. Mr. Blanco submitted subsequent evaluation reports showing outstanding ratings and recommendations for promotion, one which specifically stated Mr. Blanco was totally committed "to helping his organization, in any capacity." AR000587.

Importantly, Mr. Blanco submitted the official report of his BOI proceeding showing the allegations underlying the unfavorable information were unsubstantiated. He also demonstrated the unfavorable information was untimely; at the time the DASEB issued its opinion, the alleged conduct for imposing the NJP had occurred nearly 16 years prior and the GOMOR was almost eight years old. Moreover, it was in the Army's best interest to ensure Mr. Blanco was retained as the agency spent significant time, money, and resources training him for leadership. The

ABCMR described the aforementioned evidence, then entirely disregarded it, summarily concluding that the documents have not served their purpose, a purpose which was never set out by the DASEB or the ABCMR.

The Army regulation requires that a GOMOR filed in the AMHRR should "include a statement indicating the imposing authority's intent for filing," which will assist both the soldier in correcting his or her behavior and the DASEB in the event the Solider seeks to have the document transferred. AR 600-37 § 3-5.b.(4). Mr. Blanco's AMHRR does not provide any specifically labeled statement, but the Chain of Command recommendations to file the reprimand in the AMHRR explain the basis for such recommendation as Mr. Blanco's "complete lack of leadership and decision making skills" and because he "has shown no remorse and does not understand the impact of his actions." AR000330.

Neither DASEB nor ABCMR considered whether this purpose –to ensure a soldier with lack of leadership and decision-making skills who does not understand the impact of his actions or show remorse continue unimpeded in the Army – had been met or explain why it was not. To the contrary, Mr. Blanco presented significant evidence of his remorse and understanding of his actions, including personally apologizing to the Muslim students and taking voluntary training and assuming extra duties to help others avoid any improper or insensitive conduct, and of his significant growth and success as a leader, with many favorable endorsements, since that time. *See, e.g.* AR000137 (Major General Waddell stating Mr. Blanco "had the strength and mental acuity to make sound decisions of the highest moral character."); AR000138-139 (memorandum from Brigadier General Christopher Burns, opining that the event at the steak house was "an isolated incident in an otherwise successful and decorated military career that has the promise of many more years of honorable service in the United States Army" and that "David has learned

from his mistake," and "has in fact corrected all of his short-coming," therefore "the intended purpose of the [GOMOR] has been served."); AR000141 (memorandum from LTC Pedro Rosario, CO of Mr. Blanco's then-current command, providing strong recommendation for Mr. Blanco's retention and promotion, expressing that Mr. Blanco had proven his character and leadership capability, had learned from mistakes, and his respect for an interaction with multinational coalition partners was above reproach, noting that "the Army needs Officers like 1LT David Blanco."); AR000143 (Memorandum from the Director of Equal Opportunity certifying that Mr. Blanco completed one-on-one remedial Equal Opportunity (Sensitivity) training at his request and volunteered to share his experience in assisting others); AR000331-332 (statement in response to GOMOR from then-2LT Blanco expressing remorse and embarrassment and acknowledging his actions were immature and insensitive).

DASEB and ABCMR further failed to consider or address the "best interests" at play in this case. In determining whether the unfavorable information should be transferred or removed, the DASEB cannot merely consider the Army's interests, but also must weigh these interests against those of the individual soldier. AR 600-37 § 1-6.b. Mr. Blanco offered official documents showing he had been promoted twice since the alleged misconduct and recommended for command positions, clearly demonstrating he had earned the trust and confidence not only of his direct superiors, but also the officers who voted to retain Mr. Blanco. AR000020-24. He also provided official documents proving he was forced to retire due to the inability to promote with these records in his file. AR000077.

It is also worth noting, the DASEB wrote "the GOMOR was imposed as an administrative measure and not as a punishment under Article 15 of the UCMJ." AR00097. It is difficult to reconcile the aforesaid statement with the actual existence of this information in Mr.

Blanco's OMPF. If punishment was not intended, yet the soldier is, in fact, being punished in the form of forced separation, it is difficult to understand why the DASEB did not find transfer or removal was warranted. This unintended and detrimental consequence is the exact criteria showing the existence of an error or injustice deserving of relief. One can only conclude, the inclusion of this statement is merely superficial; the Army did not fully consider Mr. Blanco's interests when deciding whether to act in his favor.

The ABCMR did not evaluate or analyze the mountain of evidence offered by Mr. Blanco when determining whether he had established the existence of an error or injustice at the hands of the DASEB. Mr. Blanco did not merely allege an error or injustice, he provided clear and convincing evidence that it was in his best interest and that of the Army to transfer or remove the unfavorable information. The failure of the ABCMR to consider the evidence provided by Mr. Blanco was an arbitrary and capricious, and should be remanded back to the Board for thorough deliberation.

**IV. The Board's Finding that Based Upon a Preponderance of the Evidence, There is Insufficient Evidence to Grant Any Relief is Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law**

When reviewing the decision of the ABCMR, it is "the Court's duty is to determine whether military tribunals have 'given fair consideration to each' claim… ." *Gonzales v. United States*, 160 Fed. Cl. 172, 180 (2022) *quoting Harris v. United States*, 102 Fed. Cl. 390, 409 (2011). In considering claims, ABCMR must determine whether an applicant demonstrated "an error or injustice by a preponderance of the evidence." 32 C.F.R § 581.3(e)(iv)(2); AR 15-185, 2-9; *see also Holmes v. United States*, 2019 U.S. Dist. LEXIS 2837 (D.D.C. Jan. 8, 2019) (stating Army Regulations require ABCMR apply preponderance of evidence standard of review). This Court has found "an agency action is arbitrary and capricious if the agency failed to follow

procedure as required by law, or has entirely failed to consider an important aspect of the case presented to them." *Calloway*, 366 F. Supp. 2d at 53 (*citing Motor Vehicle Mfrs.* Ass'n, 463 U.S. at 43). The reviewing court "must examine whether or not the agency has considered all of the evidence before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded or given less weight.'" *Smith*, 927 F.Supp. at 14 (*quoting Mozur,* 600 F.Sup. 772, 782 (E.D.Pa. 1995)).  When an agency fails to reveal its rationale, the court "has no choice but to remand for a reasoned explanation." *Tex Tin Corp. v. EPA*, 935 F.2d 1321, 1324 (D.C. Cir. 1991).  While prior Board decisions are not binding precedent, "the requirement of reasoned decisionmaking compel[s] the Board to consider" prior relevant decisions," especially when the plaintiff pointed to specific prior decisions.  *Marta v. Whitley,* Case No. 20-cv-1020 (APM) 2021 U.S. Dist. LEXIS 61996, *18-19 ((D.D.C. 2021).

The ABCMR's one paragraph decision regarding Mr. Blanco's petition offers no rationale for its denial of relief or explanation as to why the significant evidence presented was not a preponderance sufficient to grant relief.  Accordingly, it is arbitrary and capricious and must be set aside.  *See, e.g*., *Dickson*, 68 F.3d at 1405 (board opinion reciting facts is insufficient; regurgitation of "the language of a statute without providing an account of how it reached its results" rendered the Board's decision arbitrary and capricious).

In additional to generally failing to offer any reasoned explanation for its denial, the ABCMR decision was fatally flawed here in multiple respects.  The ABCMR failed to consider prior Board decisions involving cases similar to Mr. Blanco's in which relief was granted.  Mr. Blanco presented four different cases in which ABCMR had directed transfer of a GOMOR to the soldier's restricted folder in similar circumstances.  *See* AR 000016-20, 000035-36. In those cases, the Board relied upon recommendations from the applicant's chain of command, the fact

that applicant has been promoted since receiving a GOMOR, and a positive history in his Officer

Evaluation Reports (OERs). Mr. Blanco presented all of these things and more. The ABCMR's

failure to distinguish the prior cases render its decision arbitrary and capricious and require it be

remanded for proper reasoned decision making. *Marta,* 2021 U.S. Dist. LEXIS 61996 at *19; *see*

*also Pettiford,* 774 F.Supp. 2d at 182 (military board's failure to consider arguments requires the

decision be reversed and remanded).

The ABCMR also failed to consider the additional arguments of injustice presented by

Mr. Blanco. Specifically, he pointed out the unjust effect of the documents in his record in that

he was forced to separate from the Army and precluded from future service. AR 000036. The

Board did not consider or explain any reason for rejecting the relevance of Mr. Blanco's desire to

continue serving his country, in a time when military members are being recalled to active

service, and with the endorsement of commanders who would eagerly accept Mr. Blanco under

their command. Yet another arbitrary and capricious failure that requires remand from this court.

*Calloway*, 366 F. Supp. 2d at 53 (*quoting Mozur,* 600 F.Sup. 772, 782 (E.D.Pa. 1995)) (holding

the reviewing court "must examine whether or not the agency has considered all of the evidence

before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded

or given less weight.'").

Additionally, ABCMR appears not to have applied the proper standard. An applicant

must demonstrate to ABCMR the existence of "an error or injustice by a preponderance of the

evidence." 32 C.F.R § 581.3(e)(iv)(2); AR 15-185, 2-9. Here, the Board's opinion concludes

with a one paragraph "discussion" stating the ABCMR's denial of all relief. This final paragraph

recaps the process of seeking alteration or removal of unfavorable information before the

DASEB. Immediately following this recap, the Board's opinion states: "The Board agreed the

criteria allowing for the removal of the GOMOR from his OMPF was not met." *Id*. The paragraph went on to say: "The Board also agreed the evidence does not constitute a basis to support the setting aside of punishment and the UCMJ has not served its purpose." *Id*. Offering no legal analysis regarding its conclusion, the Board's decision simply relied on the analysis of the DASEB in concluding Mr. Blanco had not provided "clear and convincing evidence" that the documents were untrue or unjust. The ABMCR's decision never explained why Mr. Blanco's arguments failed to show, *by a preponderance of the evidence*, he suffered an error or injustice when the DASEB denied his request. When an agency fails to follow procedure as required by law, or has entirely failed to consider an important aspect of the case presented to them, its actions are arbitrary and capricious. *Calloway*, 366 F. Supp. 2d at 53 (*citing Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

The ABCMR also failed to consider Mr. Blanco's arguments as to the error and injustice of the improperly destroyed BOI transcript, including witness testimony and exhibits. Mr. Blanco was denied his statutory right to provide the clear and convincing evidence required when petitioning the DASEB for the removal of unfavorable information. The ABCMR ignored the harm and extreme prejudice suffered by Mr. Blanco as a result, instead arbitrarily relying solely upon the opinion of the DASEB in opting against any relief requested by Mr. Blanco.

According to Army regulations, the purpose of both administrative investigations and Board of Inquiry hearings "is to ascertain facts, document and preserve evidence, and then report the facts and evidence to the approval authority." AR 15-6 § 1-8. Witness testimony and/or statements must be preserved verbatim or attached to the report as an exhibit. *Id*. at 3-4. When a BOI hearing has concluded, "the respondent or respondent's counsel will be provided with a copy of the report, including all exhibits and enclosures that pertain to the respondent." *Id*. at 7-

12. It is important to recognize respondent's receipt of the record is mandatory and not permissive.

The Army ignored its own regulations and destroyed the critical documents it was required to preserve. Mr. Blanco was forwarded, via electronic mail, a "script" of his BOI hearing which omits all exhibits and witness testimony. The entire document is almost 100 pages, yet only 6 were left intact. AR000052-000057. To demonstrate how detrimental this is for Mr. Blanco, item 2.c. under section III of the BOI report states "not applicable" when asked whether "the testimony/statement of each witness [has] been recorded verbatim or been reduced to written form and attached as an exhibit?". The usage of "not applicable" makes it seem as though there were no witnesses at all which is untrue. Furthermore, it also unclear whether the witness testimony was ever properly documented as Mr. Blanco was never given the opportunity to read the testimony in the "script" nor as an exhibit.

Quite contrary to Mr. Blanco's destroyed documents, the records regarding the GOMOR and NJP within Mr. Blanco's OMPF were perfectly maintained by the Army. The report of the DASEB recites the exact language from GOMOR, quoting word-for-word the basis for its issuance. The report also restates, verbatim, the NJP document in Mr. Blanco's record. Pitted against these perfectly preserved and condemning documents are the few remaining pages which summarize Mr. Blanco's vindication.  Importantly, the documents were destroyed by the very agency against which Mr. Blanco was defending himself. It is completely unjust to expect Mr. Blanco provide clear and convincing evidence, when the evidence proving his innocence no longer exists. The ABCMR abused its discretion in ignoring this egregious procedural error which left Mr. Blanco highly disadvantaged in arguing for the removal of the GOMOR and NJP.

There are a plethora of errors in the ABCMR's conclusion that insufficient evidence exists to grant relief in this case. The Board's failure to consider arguments made, relevant prior decisions, or offer any reasoned explanation for its rejection of the substantial evidence presented render the decision arbitrary and capricious and require a remand for reasoned decision-making consistent with the facts and evidence in this case.

## CONCLUSION

For all of the foregoing reasons, the ABCMR's decision in this case was arbitrary and capricious, an abuse of discretion, and contrary to law. Accordingly, it must be set aside and remanded for a decision that accounts for the substantial evidence presented by Mr. Blanco in seeking the removal of unjust records from his file and a special selection board to consider his promotion, and thus continued service, without the derogatory information in his files.

Respectfully Submitted,

Elizabeth M. Candelario, D.C. Bar No. 986218
Elizabeth.candelario@parlatorelawgroup.com
202-788-6274

Kieran McDowell, Bar No. PA0099
Kieran.mcdowell@parlatorelawgroup.com
215-619-3122

PARLATORE LAW GROUP, LLP
One World Trade Center, Suite 8500
New York, NY 10007