# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID A. BLANCO, | : |
| | : |
| Plaintiff, | : Civil Action No.:   22-1883 (RC) |
| | : |
| v. | : Re Document Nos.:   11, 13 |
| | : |
| CHRISTINE E. WORMUTH, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff David A Blanco ("Plaintiff" or "Blanco") brings the instant action against Christine E. Wormuth in her official capacity as the United States Secretary of the Army,[1] claiming that the Army Board for Correction of Military Records (the "ABCMR") violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.*, in denying his application to remove certain adverse information from his military records. For the reasons explained below, the Court grants Blanco's motion for summary judgment and denies the Army's cross-motion for summary judgment. The Court therefore remands the matter to the ABCMR.

## BACKGROUND

### A. Factual Background

Blanco enlisted in the United States Army Reserves on October 20, 1989. Pl.'s Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mot. Summ. J.") at 1, ECF No. 11. While enlisted, he served a

---

[1] Because Blanco is suing Secretary Wormuth in her official capacity as the Secretary of the Army, this opinion will refer to Defendant as "the Army."

combat tour in Afghanistan. *Id.* at 2. In February 2004, while in Afghanistan, Blanco was issued a non-judicial punishment ("NJP") under Article 15 of the Uniform Code of Military Justice ("UCMJ") after he was allegedly found sleeping while on duty and then willfully disobeyed an order to stand "at ease." *See* Joint App. at 39–40, 42, ECF No. 18. Sergeant First Class Dencil Harrison recalled that, although he had shone a flashlight into the pickup truck where Blanco was sitting on duty, Blanco did not react to the light and had his eyes closed. *Id.* at 44. Blanco then denied that he had been sleeping and, despite Harrison's order to stand at ease, continued to talk and stated that "[Harrison] was not in his chain of command and that he didn't have to listen to [Harrison]." *Id.* According to the NJP, this incident was not the first time Blanco had been accused of sleeping while on duty. *Id.* at 42. As a result, Blanco was reduced in rank to Sergeant/E5 and given 45 days of extra duty, and a record of the NJP was placed in his Army Military Human Resource Record ("AMHRR"). Pl.'s Mot. Summ. J. at 2.

In 2010, Blanco was commissioned as a Second Lieutenant in the Army Reserves. *Id.* While attending the Infantry Basic Officer Leadership Course, Blanco was issued a general officer memorandum of reprimand ("GOMOR") on August 29, 2011 for "conduct unbecoming of an officer for exercising extreme insensitivity toward the religious practices of an Afghan officer." Joint App. at 326. According to the GOMOR, Blanco had gone to a local restaurant with a group of other students, including a visiting student officer from Afghanistan. *Id.* Under the impression that the ribs at the restaurant were made from beef, the Afghan student began eating the ribs. *Id.* "Fully aware of the religious prohibition against consuming pork products," Blanco then videotaped the student as he ate the ribs. *Id.* Seeking to "evoke a 'funny' reaction from the Muslim officer and to capture that reaction on camera," Blanco then "made inappropriate comments to the effect of, 'Is it sweet?' and 'It's Ramadan and you're eating

2

pork.'" *Id.* The "immature and insensitive act was aggravated when it was revealed that the rib was actually a pork product," rather than being made of beef. *Id.*[2] An investigation following the incident, however, found that the individuals involved had not knowingly fed the Afghan student pork, but stated that Blanco "did knowingly commit an act of cruelty towards [the Afghan student] by making statements to him while videotaping him eating a rib to 'get a reaction out of him.'" *See id.* at 344. In response to the GOMOR, Blanco apologized for his actions, describing them as "immature and insensitive," and stating that he had not had a "desire to be cruel or to embarrass, degrade or insult anyone's religious beliefs or cultural mores." *Id.* at 331. He also noted that he had apologized to the two students involved. *Id.* at 332.

In March 2012, Blanco was promoted to the rank of First Lieutenant. Pl.'s Mot. Summ. J. at 3. Then, in May 2016, a Promotion Selection Board selected Blanco for promotion to the rank of Captain. *Id.* at 4. Subsequently, however, the post-selection screening process for promotions flagged that Blanco had received the NJP and GOMOR. *See* Joint App. at 70. The Army's Human Resources Command then issued a memorandum stating that Blanco's records would be referred to a Promotion Review Board, which would recommend one or more of the following: that Blanco "be retained on the promotion list," that "[his] name be removed from the promotion list," and that "[he] show cause for retention on active duty." *Id.*

In July 2017, the Promotion Review Board voted to remove Blanco from the promotion selection list and to require that he "show cause for retention in an active status as a result of misconduct and moral and professional dereliction," citing the NJP and GOMOR. *Id.* at 74. On May 14, 2018, then-Secretary of the Army Mark T. Esper removed Blanco from the promotion

---

[2] Although the GOMOR only notes Blanco's actions with respect to the Afghan student, the investigation into the incident indicates that a Surinamese officer also ate the ribs, was filmed by Blanco while doing so, and was upset by the recording. *See* Joint App. at 341.

3

list and directed the Commanding General of the Army Reserve Command to initiate elimination proceedings, *id.* at 521, or administrative separation, Pl.'s Mot. Summ. J. at 5.

In March 2019, a Board of Inquiry ("BOI") was convened to determine whether Blanco should be separated from or retained in the Army. *See* Joint App. at 60–69. The BOI was also charged with stating findings as to whether Blanco committed the misconduct alleged in the NJP and GOMOR. *See id.* The BOI concluded that Blanco did not "commit intentional neglect or failure to perform assigned duties" or "commit conduct unbecoming an officer," and further recommended that Blanco be retained. *Id.* at 69.

According to Blanco, because the "BOI results were not yet entered into [his] records" and the NJP and GOMOR remained in his file, however, he was once again not selected for promotion to the rank of Captain. Pl.'s Mot. Summ. J. at 6. Per Army policy, reserve officers who were not selected for promotion twice were required to be separated from the Army unless certain exceptions applied. *See* Joint App. at 77. On October 1, 2019, the Army issued a memorandum advising that because Blanco had not been selected for promotion twice, his "transition from an active status" was "mandatory." *Id.*

In November 2019, Blanco requested that the Army's Suitability Evaluation Board ("DASEB") transfer the NJP and GOMOR from his AMHRR, arguing in part that the BOI had found "that the preponderance of evidence did not support or substantiate the derogatory information in [his] file." *Id.* at 81. But the DASEB "determined there [was] insufficient evidence to justify removal or transfer of the unfavorable information to the AMHRR restricted section," *id.* at 92, concluding unanimously that "[t]he evidence presented [did] not provide substantial evidence that the documents in question have served their intended purposes or are untrue or unjust, and that their transfer would be in the best interest of the Army," *id.* at 125.

As the DASEB explained, to remove a GOMOR from the AMHRR, an appellant has the burden of proof "to provide evidence of a clear and convincing nature that the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the AMHRR." *Id.* at 130.  Although Blanco put forward that the BOI had found that "the preponderance of evidence did not support or substantiate the derogatory information in his AMHRR," the DASEB stated, neither the DASEB nor the imposing authority ("IA")—the command that issued the GOMOR—was bound by the BOI. *Id.* at 131.  According to the DASEB, the BOI was only "limited to making a determination on whether to retain (with or without reassignment) an officer on active duty or to eliminate an officer." *Id.*  The DASEB found that Blanco had not provided "clear and convincing evidence the GOMOR [was] unjust, or that he should not be held liable for the alleged misconduct addressed in the GOMOR," and had also not "submit[ted] a letter from the IA stating the reprimand [was] unjust or untrue or new evidence was being considered or discovered." *Id.*

Alternatively, Blanco had also requested that the NJP and GOMOR be transferred to the restricted portion of his AMHRR, which requires that "the appellant . . . show by substantial evidence that [the derogatory documents] have served their intended purpose and that it is in the best interest of the Army to transfer them." *Id.*  Despite recognizing that Blanco had received the NJP and GOMOR years prior, had earned a number of awards and promotions, and had been retained by the BOI, the DASEB stated: "Given the seriousness of the appellant's misconduct, his many years of experience, his rank and position, and his maturity in understanding proper conduct, it does not appear that the appellant has demonstrated that the intent of the derogatory documents have not been served." *Id.* at 132.  Accordingly, the DASEB concluded, Blanco

5

"[had] not provided sufficient evidence to show the [NJP] and GOMOR have served their intended purposes or that it is in the best interest of the Army to transfer them at this time." *Id.*

Blanco was "forced into retirement" in May 2020. Pl.'s Mot. Summ. J. at 6–7. That same month, he requested that the ABCMR remove the NJP and GOMOR from his AMHRR. Joint App. at 32. Blanco raised a number of arguments in support. *See id.* at 33–36. First, he contended, he did not engage in inappropriate conduct and the BOI was a "more reliable forum" for assessing Blanco's conduct than the circumstances under which the GOMOR was issued. *See id.* at 33–34. Second, Blanco stated, he had taken remedial training and appropriate corrective action. *Id.* at 34. Third, he argued that the investigation leading to the GOMOR was—unlike the BOI—"incomplete" because it "failed to account for different versions of what happened, failed to reconcile those differences, and did not address biases of those personnel involved." *Id.* Fourth, he alleged that the government had not kept his exhibits or a summarized transcript from the BOI, thus preventing him from demonstrating to the DASEB that the underlying conduct had not occurred. *Id.* at 35; *see also* Pl.'s Mot. Summ. J. at 11. Fifth, the NJP and GOMOR had served their intended purpose, according to Blanco, because he had since "excelled" as a leader in various positions, but the GOMOR was "preventing further service." Joint App. at 35. Sixth, Blanco requested that the ABCMR consider various documents— recommendations, officer evaluation reports, and ABCMR decisions supporting removal—that "demonstrate[] that the GOMOR has served the intended purpose." *Id.* Seventh, Blanco argued, previous ABCMR decisions, including one in which the applicant had been promoted since receiving a GOMOR, supported removal of the NJP and GOMOR. *Id.* Eighth, and finally, Blanco contended that his being precluded from serving was an "injustice to him, the United States Army and the nation" in light of the existing global circumstances. *Id.* at 36.

6

After summarizing the documentation and arguments that Blanco had put before it, the ABCMR concluded as follows:

> After reviewing the application, and all evidence provided, the Board determined relief is not warranted. The applicant's contentions, the military record, and regulatory guidance were carefully considered. Regulatory guidance provides that once a reprimand is filed in the OMPF, the reprimand and associated documents are permanent unless removed by the appropriate authority. Furthermore, once an official document has been properly filed in the OMPF, it is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. Thereafter, the burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF. The Board agreed the criteria allowing for the removal of the GOMOR from his OMPF was not met. The Board also agreed the evidence does not constitute a basis to support the setting aside of punishment, and the UCMJ has not served its purpose. Based upon a preponderance of the evidence, the Board determined there is insufficient evidence to grant any of the requested relief.

*Id.* at 25.

### B.  Procedural Background

On June 30, 2022, Blanco filed his Complaint in this Court to challenge the ABCMR's decision under the APA. *See generally* Compl., ECF No. 1. He asks that the Court hold unlawful and set aside the ABCMR's decision, then remand the matter to the ABCMR. *Id.* at 8. Blanco has moved for summary judgment. *See generally* Pl.'s Mot. Summ. J. The Army opposes Blanco's motion and has also cross-moved for summary judgment. *See generally* Def.'s Cross-Mot. Summ. J, ECF No. 13; Def.'s Opp'n Pl.'s Mot. Summ. J., ECF No. 14. Blanco opposes the Army's cross-motion for summary judgment. *See generally* Pl.'s Opp'n Def.'s Cross-Mot. Summ. J., ECF No. 15. Each has replied to the other's opposition. *See generally* Pl.'s Reply Def.'s Opp'n, ECF No. 16; Def.'s Reply Pl.'s Opp'n, ECF No. 17. The pending motions are now ripe for consideration.

**LEGAL STANDARD**

Where a court reviews a final agency action under the APA, 5 U.S.C. § 706, the usual standard under Federal Rule of Civil Procedure 56(a) does not apply to motions for summary judgment because of the court's limited role in reviewing the administrative record. *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015). Instead, under the APA, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

A court may set aside an agency action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This arbitrary and capricious standard is "highly deferential" and "presumes the agency's action to be valid." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The scope of this review "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "[A] reviewing court may not set aside an agency [decision] that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute," so long as the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* at 42–43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). A court upholds an agency's decision when it can "reasonably . . . discern[ ]" the agency's path, *Pub.*

*Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993), even when the agency provides only a "brief statement" explaining "why it chose to do what it did," *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotation marks omitted).

Review of the ABCMR's decisions requires "an unusually deferential application of the 'arbitrary and capricious' standard" because the ABCMR is a military board. *Jenkins v. Speer*, 258 F. Supp. 3d 115, 124 (D.D.C. 2017) (quoting *Kreis v. Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). "A court will disturb only the military board's 'most egregious' decisions." *Id.* "[T]he function of [the court] is not to serve as a super correction board that reweighs the evidence." *Poole v. Harvey*, 571 F. Supp. 2d 120, 124 (D.D.C. 2008) (quoting *Epstein v. Geren*, 539 F. Supp. 2d 267, 275 (D.D.C. 2008)). Thus, a court's review of the ABCMR's decisions "focuses not on whether the Army was 'substantively correct' . . . but rather on whether the ABCMR's explanations for that choice demonstrate that [a] defendant[ ] 'permissibly exercised [its] discretion and made a choice that is supported by at least substantial evidence.'" *Albino*, 78 F. Supp. 3d at 164 (quoting *Hill v. Geren*, 597 F. Supp. 2d 23, 29 (D.D.C. 2009)). The court "need only find that the decision of a military review board 'minimally contains a rational connection between the facts found and the choice made.'" *Id.* (quoting *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)). A plaintiff who seeks a correction of military records at the ABCMR bears the burden of proof. *Jenkins*, 258 F. Supp. 3d at 124.

Even so, the ABCMR's actions "must be supported by reasoned decisionmaking," *id.* (quoting *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014)), and "must respond to the plaintiff's non-frivolous arguments," *id.* (citing *Frizelle*, 111 F.3d at 177). "[T]he ABCMR is not entitled to unlimited deference." *Id.*

9

## ANALYSIS

In short, Blanco objects that the ABCMR's decision did not engage with his arguments, but instead only "acknowledged all of the evidence [and] then summarily denied relief." Pl.'s Mot. Summ. J. at 1. The Army disagrees, arguing that Blanco did not meet the standard for the relief that he sought from the ABCMR, *see* Def.'s Cross-Mot. Summ. J. at 18–24, which had "provided a detailed decision over [20] pages long," *id.* at 21. Contrary to the Army's characterization of the decision, however, the ABCMR scarcely grapples with any of Blanco's evidence, which the ABCMR spends 18 of 19 pages simply recounting or parroting before rejecting. *See* Joint App. at 7–25. Accordingly, the Court holds that the ABCMR's decision was arbitrary and remands the matter to the ABCMR for further consideration of Blanco's potentially non-frivolous arguments.

"It is well-established that a decision by the ABCMR that fails to address a plaintiff's non-frivolous, material arguments is arbitrary." *Albino*, 78 F. Supp. 3d at 167; *see also, e.g.*, *Frizelle*, 111 F.3d at 177 (concluding that the Coast Guard Board of Correction of Military Records' failure to respond to two of the plaintiff's arguments that "[did] not appear frivolous on their face and could affect [its] ultimate disposition" rendered its decision arbitrary); *Poole*, 571 F. Supp. 2d at 126 (finding the ABCMR's decision to be arbitrary and capricious due to its failure to address the plaintiff's non-frivolous and potentially meritorious argument); *Appleby v. Harvey*, 517 F. Supp. 2d 253, 266 (D.D.C. 2007), *aff'd sub nom. Appleby v. Geren*, 330 F. App'x 196 (D.C. Cir. 2009). That decision "need not be 'a model of analytic precision to survive a challenge.'" *Poole*, 571 F.Supp.2d at 124 (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). And in fact, "[a] reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Dickson*, 68 F.3d at 1404 (quoting

*Bowman Transp., Inc. v. Arkansas–Best Motor Freight System*, 419 U.S. 281, 286 (1974)). But the ABCMR's decision must nevertheless "minimally contain 'a rational connection between the facts found and the choice made.'" *Id.* (quoting *State Farm*, 463 U.S. at 43).

> For instance, should the ABCMR disregard a non-frivolous argument,
>
> it must expressly indicate that it has done so. Otherwise neither the plaintiff nor [the] court would be able to discern whether the ABCMR considered and was unpersuaded by those factors or whether the ABCMR simply excluded them from its decision making process. Moreover if the ABCMR excludes those factors from consideration it must explain its rationale for doing so.

*Rudo v. Geren*, 818 F. Supp. 2d 17, 26 (D.D.C. 2011) (quoting *Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 853 (D.C. Cir. 1993)). That is, "it is not enough for the ABCMR simply to identify a plaintiff's non-frivolous arguments without responding to them, either by addressing the arguments' merits or explaining why the merits need not be addressed." *Albino*, 78 F. Supp. 3d at 167.

Here, "the ABCMR acknowledged many of Plaintiff's arguments only to fail to address or resolve those arguments in any discernible way in its analysis." *Id.* The record of the ABCMR's proceedings summarizes Blanco's arguments, *see* Joint App. at 8–12, and lays out his history in service, including the NJP, the GOMOR, and his recommendations and awards, *see id.* at 12–25. At first glance, it would appear that the ABCMR provides an assessment of the incident underlying the GOMOR; but in fact, the ABCMR's record largely parrots the language in the GOMOR, *compare* Joint App. at 15–16 *with id.* at 326, without indicating whether the ABCMR in fact agrees with the GOMOR's disapproving appraisal of Blanco's conduct. It does not engage with his counsel's assertion that the Army did not maintain the BOI records, thus hampering his chances before the DASEB, *see id.* at 8, 10, nor does it provide any analysis of the various ABCMR cases Blanco cites in support, *see id.* at 16–19. And perhaps most importantly,

11

the ABCMR does not grapple with the BOI's findings that Blanco did not "commit intentional neglect or failure to perform assigned duties under the provisions of Army Regulation 135-175 (Separation of Officer), paragraph 2-13e(1)" or "commit conduct unbecoming an officer under the provisions of Army Regulation 135-175, paragraph 2-13p." *Id.* at 22. The ABCMR simply asserts that it "carefully considered" the "applicant's contentions, the military record, and regulatory guidance," and found that "there [was] insufficient evidence to grant any of the requested relief." *Id.* at 25.

At minimum, Blanco has a non-frivolous argument that retention of the NJP and GOMOR in his records is unjust given the BOI's findings. Although the language of the BOI's conclusions is unclear to the Court, and could be interpreted as stating either that Blanco's conduct should not have constituted violations of the relevant regulations or that it believed Blanco had not even committed the conduct at all, *see* Def.'s Cross-Mot. Summ. J. at 20–21, the ABCMR does not provide any reasoning as to why the BOI's findings should be discounted or are of no import, *see* Joint App. at 16, 25. The Army avers that the ABCMR "agreed" with the DASEB in its decision, and suggests that, because the DASEB provided its own "detailed accounting," the ABCMR's decision is "well-explained and well-supported by the facts in the administrative record." Def.'s Cross-Mot. Summ. J. at 21, 23. Indeed, even Blanco assumes that the ABCMR "simply relied on the analysis of the DASEB." Pl.'s Mot. Summ. J. at 21; *see also id.* at 21 ("The ABCMR ignored the harm and extreme prejudice suffered by Mr. Blanco as a result, instead arbitrarily relying solely upon the opinion of the DASEB in opting against any relief requested by Mr. Blanco."). But the ABCMR did not in fact indicate that it was agreeing with the DASEB specifically or that it meant to adopt or incorporate the DASEB's conclusions. *See* Joint App. at 25. Contrary to the Army's objections otherwise, it would seem at least

12

plausible to argue that it would be unjust to retain the NJP and GOMOR in Blanco's files if the BOI determined that "the underlying acts were not so serious as to rise to the level of misconduct outlined" in the Army Regulations. Def.'s Cross-Mot. Summ. J. at 21. If the ABCMR disagrees with the BOI's findings, and has chosen to disregard the BOI's conclusions because the BOI cannot bind the ABCMR, then the ABCMR should say so.

It is difficult for the Court to assess, however, whether Blanco's argument regarding the maintenance of the BOI's records is non-frivolous. During the ABCMR proceedings, Blanco asserted that "the Government failed to maintain the records of his BOI other than the recorder's packet, the board's findings, and the script," and that "[t]he summarized transcript of the proceedings was not maintained." Joint App. at 8; *see also* Pl.'s Mot. Summ. J. at 21 ("The ABCMR also failed to consider Mr. Blanco's arguments as to the error and injustice of the improperly destroyed BOI transcript, including witness testimony and exhibits."); *see also id.* at 22 (claiming that Blanco received only a "script" of the BOI hearing and that "[t]he entire document is almost 100 pages, yet only 6 were left intact"). Now that the Army has included an excerpt of the BOI transcript in the record, *see* Joint App. at 687–88, Blanco asserts that he "was provided with a summarized transcript and informed that was all that existed," Pl.'s Reply Def.'s Opp'n at 10. The existence of a full transcript raises the possibility that Blanco may have been misinformed when told that only a summarized transcript would be available. But the record does not go so far as to indicate, as Blanco suggests, that other records were not kept or affirmatively destroyed. *See* Joint App. at 59. To the extent that Blanco discovered that other documentation could not be obtained, Blanco did not put that evidence before the ABCMR or this Court. Further, his contradictory representations regarding the summarized transcript leave the Court confused as to what he did or did not receive.

Thus, at least based on the information available to the Court, it would appear that Blanco's argument that the Army failed to maintain or destroyed certain records may have been unfounded and frivolous at the time of the ABCMR proceedings. The record nevertheless leaves open the possibility that Blanco did not receive a transcript when he requested one.[3] Given the Army's representations that it has now provided Blanco with the relevant records, and considering that the Army has apparently shown that these records exist, he should consider whether he has a foundation for reasserting his argument on remand. *See* Def.'s Reply Pl.'s Opp'n at 7 ("Defendant, in seeking to respond to Plaintiff's serious allegation, concluded that the records were not, in fact, destroyed. In lieu of requiring Plaintiff to attempt to retrieve such records under the Freedom of Information Act or through a motion for early and expedited discovery, Defendant provided Plaintiff with a copy of the records."). And "[o]n remand, the [ABCMR] is of course free to decline to consider [Blanco]'s claim on the merits, but if it continues to follow that course, it will have to articulate its reasons for doing so." *Roberts v. Harvey*, 441 F. Supp. 2d 111, 122 (D.D.C. 2006).

The Army also offers various reasons why the NJP and GOMOR are not unjust and should not be transferred—Blanco's chain of command had found the reprimands appropriate, and he had not met the standard for transfer or removal of the derogatory information, considering that the BOI cannot bind the ABCMR. *See* Def.'s Cross-Mot. Summ. J. at 18–21, 23–24. Moreover, the Army now distinguishes Blanco's case from the other ABCMR decisions that he cites, arguing that each of those other applications expressed remorse and apologized whereas Blanco had not indicated remorse for his actions. *See* Def.'s Reply Pl.'s Opp'n at 4–6.

---

[3] The Court does not consider, however, whether Blanco was entitled to such a transcript, even if one existed at the time of his request.

But the ABCMR did not itself articulate any of these reasons for why Blanco did not meet the requisite standard, nor did it explain why its previous decisions can be distinguished. *See* Joint App. at 25. Thus, "[w]hatever the merits of these post-hoc justifications, they . . . cannot be considered by this Court." *Albino*, 78 F. Supp. 3d at 168; *see also Poole*, 571 F. Supp. 2d at 126 ("[A] court reviewing an agency's decision must judge the propriety of agency action solely by the grounds invoked by the agency. Because the [defendant's] explanation . . . is neither in the ABCMR decision nor in the administrative record, it is an improper post hoc justification." (internal quotation marks and citations omitted)).[4]

In sum, because the ABCMR did not address certain of Blanco's arguments that appear to be non-frivolous and potentially meritorious, the Court holds the ABCMR's decision to be arbitrary and capricious. To be clear, however, the Court does not take a position on the substance of Blanco's request for relief. It merely remands the matter to the ABCMR. *See Albino*, 78 F. Supp. 3d at 169–70.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 11) is **GRANTED**, and Defendant's Cross-Motion for Summary Judgment (ECF No. 13) is **DENIED**. The Court remands the matter to the ABCMR to reassess Plaintiff's claims within the next 180 days. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 16, 2023                                          RUDOLPH CONTRERAS
                                                                  United States District Judge

---

[4] The Court also notes Blanco's argument that the "ABCMR appears not to have applied the proper standard," but does not address it here given that the matter will be remanded to the ABCMR for further consideration. Pl.'s Mot. Summ. J. at 20.